**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-1903

CELIA PALMER,

      Plaintiff,

v.

COLORADO SPRINGS, COLORADO,
KEITH WREDE, in his individual and official capacities,
WESLEY WOODWORTH, in his individual and official capacities,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

      Plaintiff Celia Palmer, by and through her attorneys, Andy McNulty and Mari Newman

of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Complaint and Jury Demand as

follows:

**INTRODUCTION**

1.      "KILL THEM ALL"

2.      Defendant Keith Wrede, a Colorado Springs Police Department ("CSPD") officer,

wrote those words on Facebook about peaceful Black Lives Matter protesters. Defendant Wrede

was not fired by Defendant Colorado Springs for advocating the murder of Black Lives Matter

protesters on his computer screen. But, this was not the first indication that Defendant Wrede

was unfit to be a police officer, let alone fit to police a Black Lives Matter protest. During the

Black Lives Matter protests that erupted after George Floyd was murdered, Defendant Wrede

repeatedly brutalized protesters because they showed up and spoke out in support of black lives,

and in protest of police violence.

1

3.      One of the individuals brutalized by Defendant Wrede was Plaintiff Celia Palmer. On June 2, 2020, Ms. Palmer took to the streets to honor the life of George Floyd. She joined a crowd of her fellow Colorado Spring residents to speak out against police brutality. For a few hours that night, Ms. Palmer was part of a growing nationwide chorus demanding accountability and an end to racism in law enforcement. Ms. Palmer's feeling of optimism about a future free from law enforcement brutality was short-lived. That night, CSPD officers tired of crowds of citizens criticizing them, issued an unconstitutional order to disperse. Ms. Palmer, not wanting to end up another name chanted at protests, obeyed these unlawful orders and began to leave the protest. However, as Ms. Palmer left, Defendant Wrede (along with his partner-in-crime Defendant Wesley Woodworth) ambushed her, slammed her to the ground for no reason, arrested her, and charged her with a crime in a blatant attempt to cover-up this excessive use of force.

4.      Ms. Palmer suffered serious consequences, including a traumatic brain injury, from Defendants' Wrede and Woodworth's unconstitutional, and outrageous, actions. Yet, to this day, Defendants Wrede and Woodworth have felt no real consequences for their illegal conduct. They continue to wear badges and carry guns. The fact that Defendant Colorado Springs still allows Defendant Wrede, in particular, to do so says everything that one needs to know about the utterly broken culture of the CSPD, a department that allows its officers to engage in such brutality without fear of any consequences.

5.      Ms. Palmer files this lawsuit with the hope that Defendants Wrede and Woodworth might face some accountability for their actions, and the CSPD will cease to tolerate its officers' blatant flouting of civilians' constitutional rights. She seeks to vindicate her rights and the rights of all others in Colorado Springs who speak out against police brutality.

## PARTIES

6.     At all times relevant to this Complaint, Plaintiff Celia Palmer was a citizen of the United States of America and a resident of the State of Colorado

7.     At all times relevant to this Complaint, Defendant City of Colorado Springs, Colorado ("Colorado Springs") was a Colorado municipal corporation.

8.     At all times relevant to this Complaint, Defendant Keith Wrede was a citizen of the United States and resident of the State of Colorado. At all relevant times, Defendant Wrede was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Colorado Springs, Colorado.

9.     At all times relevant to this Complaint, Defendant Wesley Woodworth was a citizen of the United States and resident of the State of Colorado. At all relevant times, Defendant Woodworth was acting within the scope of his official duties and employment and under color of state law in his capacity as a law enforcement officer for Colorado Springs, Colorado.

## JURISDICTION AND VENUE

10.     This action arises under the Constitution and laws of the United States, and is brought pursuant to Title 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

11.     Venue is proper in this District according to 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District and all Defendants reside in this District.

## FACTUAL ALLEGATIONS

12.     George Floyd was murdered on May 25, 2020. Minneapolis police officers arrested Mr. Floyd, a 46-year-old Black man, after a convenience store employee called 911 and told the police that Mr. Floyd had bought cigarettes with a counterfeit twenty-dollar bill. Those officers pinned Mr. Floyd to the ground. Then one officer, Derek Chauvin, put his knee on Mr. Floyd's neck. He would suffocate Mr. Floyd for eight minutes and forty-six seconds while Mr. Floyd repeatedly told him that he couldn't breathe; while numerous other officers callously looked on and did absolutely nothing; while bystanders pleaded for Officer Chauvin to stop killing Mr. Floyd; while Officer Chauvin mocked Mr. Floyd. Among Mr. Floyd's final words were "please, please, please, I can't breathe."

13.     Mr. Floyd's murder, and the system of police violence that caused it, sparked millions of people to gather across this nation, and world, to mourn and call for the abolition and reform of modern policing. Colorado Springs was among the cities where there was a strong reaction to Mr. Floyd's death with thousands taking to the streets in protest. The response to Mr. Floyd's death particularly resonated in Colorado Springs because its police department had recently killed De'von Bailey, a young, black man, by shooting him in the back as he ran away; yet, the police officer who shot and killed Mr. Bailey faced no criminal charges or even discipline from CSPD.

**Defendants brutalized Celia Palmer at a Black Lives Matter protest in Colorado Springs on June 2, 2020.**

14.     Ms. Palmer, a graduate of Colorado College, was among the millions of Americans outraged by the murder of George Floyd at the hands of police, and wished to attend the protests as an ally so as to show her support for the Black Lives Matter movement. On June 2, 2020, Celia Palmer attended one of the Black Lives Matter protests sparked by George Floyd's death. She attended the protest with a close friend.

4

15.     The protesters, including Ms. Palmer, marched throughout downtown Colorado Springs, ending up near the CSPD police headquarters at East Rio Grande Street and South Nevada Avenue. Ms. Palmer joined others in calling for accountability for police brutality. Little did she know she would later be a victim of the exact brutality she was protesting.

16.     At approximately 10:43 p.m., CSPD officers ordered the crowd to disperse. There was no basis for declaring the assembly unlawful. There was no violence or property destruction occurring. There was no threat of imminent violence or property destruction. The protest was completely peaceful.

17.     Even though Ms. Palmer was simply peacefully protesting, she complied with the dispersal order and left the area.

18.     Ms. Palmer walked away from the CSPD headquarters down Nevada Avenue and headed toward her car. Approximately ten minutes later, Ms. Palmer had walked multiple blocks away (and well out of the area where the dispersal order was given), near the intersection of South Nevada Avenue and East Cimarron Street.

19.     When Ms. Palmer reached the intersection of South Nevada Avenue and East Cimarron Street, she witnessed a CSPD officer harassing a young Black man. Ms. Palmer stood at a distance, over twenty feet away, and watched the officer with the hope that her presence would prevent CSPD officers from turning the young Black man into the next De'Von Bailey, George Floyd or Breonna Taylor. Ms. Palmer's friend stepped closer to the young Black man to try to diffuse the situation, but Ms. Palmer continued to stand at a distance. The CSPD officer harassing the young Black man, suddenly and without warning, sprayed Ms. Palmer's friend in the face with OC spray for no apparent reason. Ms. Palmer was also hit with the impact of the

OC spray. Confused, and incapacitated by the OC spray, Ms. Palmer and her friend fled the area, walking briskly down East Cimarron Street toward their car.

20.     While Ms. Palmer and her friend were leaving the area, two CSPD officers, Defendants Keith Wrede and Wesley Woodworth, targeted them. Defendant Wrede purposefully ambushed Ms. Palmer and her friend, tackling both from behind without any warning whatsoever. The force of Defendant Wrede's tackle slammed Ms. Palmer to the ground and her head bounced off the pavement. Ms. Palmer went limp and was completely within Defendant Wrede's control.

21.     Defendant Woodworth watched Defendant Wrede inflict this grossly excessive force and did nothing to intervene. Then, Defendant Woodworth jumped on Ms. Palmer and grabbed her by the hair. Defendant Woodworth jerked Ms. Palmer's head around using her hair and slammed it against the ground. The force used to pull Ms. Palmer's hair would cause a clump of it to fall out later.

22.     Defendants Wrede's and Woodworth's uses of force caused Ms. Palmer to suffer a traumatic brain injury.

23.     Defendants Wrede and Woodworth arrested Ms. Palmer. There was no basis to believe that Ms. Palmer had committed any crime whatsoever. Indeed, Ms. Palmer was arrested for leaving the protest in compliance with an unlawful order to disperse. No officer told Ms. Palmer to leave the area of South Nevada Avenue and East Cimarron Street, and she was given no warning prior to being arrested that she would subject to arrest if she did not disperse from that area.

24.     Ms. Palmer was walking away from the protest on public streets and sidewalks when she was tackled and arrested by Defendants. She was not disrupting traffic in any way. Ms.

Palmer was peacefully leaving a protest – as she had been instructed to do – at the time that Defendants brutalized her.

25.     Defendants tackled, arrested, jailed, and concocted charges against Ms. Palmer because she was speaking in support of the Black Lives Matter movement and criticizing law enforcement actions. Had she been speaking out in favor of law enforcement, Defendants would not have taken these retaliatory actions against her. In other words, Defendants' actions were a content- and/or viewpoint-based restriction on her speech.

26.     There was absolutely no basis for using force against Ms. Palmer. She was not fleeing from police when she was tackled. Ms. Palmer had committed no crime when Defendants Wrede and Woodworth used force against her. Ms. Palmer had not threatened, let alone used, violence against Defendants Wrede and Woodworth, or anyone else. Ms. Palmer was simply leaving a peaceful protest, in compliance with unlawful CSPD commands, when she Defendants tackled and brutalized her.

27.     Ms. Palmer was booked into the El Paso County Jail. She was charged with obstruction for allegedly failing to disperse, but those charges were dismissed.

28.     The only reason that Defendants Wrede and Woodworth initiated charges against Ms. Palmer was to cover-up the obvious excessive force that they had used. Defendant Woodworth falsely wrote in his report that Ms. Palmer attempted to push Defendant Wrede and that she had grabbed onto Defendant Wrede at multiple points. Neither of these things happened. These false statements were the only basis for prosecuting Ms. Palmer.

29.     There was no basis for the charges or Defendant Woodworth's statements, which were relied on by the prosecutor in the continued prosecution of Ms. Palmer. When the prosecutor assigned to the case actually looked at the facts, it became clear that there was no

probable cause for the charges against Ms. Palmer. The prosecutor assigned to the case knew that she could not prove that Ms. Palmer had committed any crime and dropped the charges against her.  Despite the fact that the baseless charges were ultimately dismissed, Ms. Palmer endured the specter of prosecution for months.

30.     Although she would have liked to have done so, Ms. Palmer did not return to a protest for some time after being brutalized by Defendants. The injuries she sustained at the hands of Defendants significantly impacted her life, and she feared further injury at the hands of CSPD officers. Defendants' actions stopped Ms. Palmer from gathering with others in the streets to support the Black Lives Matter movement.

31.     Both Defendants made the affirmative decision not to activate their body-worn cameras until *after* using grossly excessive force against Ms. Palmer. This was not the first time that Defendant Wrede had chosen not to activate his body-worn camera so as to cover-up his brutalization of protesters. The day prior, Defendant Wrede used excessive force against a Black Lives Matter protester. Defendant Wrede chose not to turn on his body-worn camera during this use of force, too.

32.     Defendant Wrede's true purpose in brutalizing Ms. Palmer was revealed one month later when he posted on Facebook "KILL THEM ALL" about Black Lives Matter protesters who were peacefully demonstrating in downtown Colorado Springs. Defendant Colorado Springs did not terminate Defendant Wrede's employment, even after he advocated murdering Black Lives Matter protesters. It is clear that Defendant Wrede was trying to injure Ms. Palmer simply because she supported the Black Lives Matter movement and that Defendant Colorado Springs has no qualms continuing to employ police officers who have – and openly express – homicidal thoughts about Black Lives Matter supporters.

**Defendant Colorado Springs abjectly failed to discipline the Defendants Wrede and Woodward for their unconstitutional conduct.**

33.     Defendant Colorado Springs has imposed no discipline on Defendants Wrede or Woodworth for their use of force against Ms. Palmer, violation of her First Amendment rights, unlawful arrest of her, and their institution of a malicious prosecution against her to cover up their violations of her rights.

34.     Defendant Colorado Springs has not even conducted an investigation into its officers' clearly unconstitutional actions. Defendant Colorado Springs has condoned the conduct of Defendant Wrede and Woodworth, and Defendants Wrede and Woodworth knew prior to violating Ms. Palmer's constitutional rights that they would not be disciplined by Defendant Colorado Springs for their actions.

35.     Through its failure to supervise and discipline Defendants Wrede and Woodward, Defendants Colorado Springs ratified the unconstitutional actions of Defendants Wrede and Woodward.

**Defendant Colorado Springs has been on notice of Defendant Wrede's misconduct, and has failed to adequately train, supervise, and discipline him causing the violation of Ms. Palmer's constitutional rights.**

36.     Even *before* Defendant Wende's violation of Ms. Palmer's constitutional rights, Defendant Colorado Springs was aware of and ratified his repeated misconduct and abuse of protesters.

37.     On May 29, 2019, Defendant Wrede was accused of excessive force by a member of the public. Defendant Wrede purposefully failed to activate his body-worn camera, claimed it malfunctioned, and did not record the interaction that formed the basis for the complaint. Defendant Colorado Springs did not discipline for using excessive force.

38.     On May 31, 2020, Defendant Wrede was policing a Black Lives Matter protest in downtown Colorado Springs. During that protest, Defendant Wrede arrested a protester without probable cause, on the basis of an unlawful dispersal order, and used grossly excessive force against him. Defendant Woodworth stood by and watched Defendant Wrede use this excessive force. Defendant Wrede purposefully did not turn on his body-worn camera, but a bystander on a cell phone filmed Defendant Wrede's use of excessive force. Despite having clear evidence that Defendant Wrede used excessive force against the protester, Defendant Colorado Springs did not take any disciplinary action against Defendant Wrede for his misconduct, or against Defendant Woodworth for failing to intervene. Defendant Wrede would go on to brutalize Ms. Palmer the very next day at a Black Lives Matter protest.

39.     Had Defendant Colorado Springs removed Defendant Wrede from active duty the *first* time he brutalized a Black Lives Matter protester during the George Floyd protests, he would not have gone on to brutalize Ms. Palmer. In other words, Defendant Colorado Springs' inaction caused the violation of Ms. Palmer's constitutional rights. And, Defendant Colorado Springs actively chose not to take Defendant Wrede off the streets with the knowledge that he was brutalizing protesters.

**Defendant Wende publicly voiced his murderous intentions toward peaceful Black Lives Matter protesters on social media.**

40.     On June 30, 2020, a Black Lives Matter protest occurred in downtown Colorado Springs during which protesters marched on Interstate 25. A local news station aired a live feed of this protest on its Facebook page. Defendant Wrede, while watching that feed, posted three times some iteration of "KILL THEM ALL" on the feed from a pseudonymous Facebook account. Defendant Wrede also posted "Solid move BLM way to make your point. I hope you are proud you damn Terrorist." Defendant Wrede made these statements to show his support for

the officers on scene murdering the Black Lives Matter protesters. Demonstrating that Defendant Colorado Springs was aware of Defendant Wrede's murderous statements toward peaceful protesters and false characterization of them as so-called terrorists, he was suspended for one week, but was not fired or otherwise disciplined.

41.     Defendant Wrede's repeated statements on June 30, 2020 demonstrate his state of mind relating to Black Lives Matter protesters, and his illegal motivation for arresting and brutalizing Ms. Palmer. Defendant Wrede retaliated against Ms. Palmer because she attended a Black Lives Matter protest and was associated with the Black Lives Matter movement. The actions that Defendant Wrede took on June 2, 2020, were based on the content and viewpoint of Ms. Palmer's speech and her associations. Had she been speaking out in favor of police brutality and/or associating with those supporting police, Defendant Wrede would not have tackled her, slammed her head into the pavement, arrested her, jailed her, and filed bogus charges against her. Defendant Wrede sought to punish those who supported the Black Lives Matter movement and his June 30, 2020 statements are probative evidence of his state of mind during his contact with Ms. Palmer and other Black Lives Matter protesters, including on June 2, 2020.

**Defendant Colorado Springs is municipally liable for Defendant Wrede's and Woodworth's unconstitutional actions.**

42.     All of the acts described herein were done by Defendants intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Ms. Palmer's federally protected rights, and were done pursuant to the preexisting and ongoing deliberately indifferent custom, policy, practice, training, and supervision of Defendant Colorado Springs acting under color of state law.

43.     Defendants' treatment of Ms. Palmer was pursuant to Defendant Colorado Springs' customs and/or practices of unlawful conduct, including but not limited to:

    a.   Stopping, detaining, arresting, citing, and prosecuting individuals for engaging in speech activity that is critical of Colorado Springs and law enforcement;

    b.   Using force against individuals who exercise their free speech rights to criticize Colorado Springs and law enforcement;

    c.   Maliciously prosecuting individuals without probable cause and, particularly, engaging in malicious prosecutions in an attempt to cover-up police misconduct; and

    d.   Failing to discipline officers, or even find officers engaged in wrongdoing, in the face of obvious constitutional violations.

44.    Upon information and belief, Defendant Colorado Springs has provided no additional training to Defendants related to the incident with Ms. Palmer.

45.    Defendants unlawful conduct, as set forth in detail herein, was in accordance with a custom and widespread practice instituted by Defendant Colorado Springs, even if not authorized by written law or express municipal policy, so permanent and well settled as to constitute a custom or usage with the force of law.

46.    Through its continuous ratification of unconstitutional detentions, arrests, prosecutions, excessive force, and stifling of free speech critical of public officials, Defendant Colorado Springs has condoned the conduct of Defendants.

47.    Defendant Colorado Springs failed to properly train and/or supervise its employees to avoid inhibiting free speech, the use of excessive force, unlawful seizure, and unlawful search.

48.     Defendant Colorado Springs knew, or should have known, that its employees would retaliate against Ms. Palmer for speaking critically of public officials thereby violating Ms. Palmer's constitutional rights.

49.     Defendant Colorado Springs was deliberately indifferent to Ms. Palmer's constitutional rights, because Defendant Colorado Springs knew that individuals in Ms. Palmer's position would be at a substantial risk of suffering dangerous consequences from Defendant Colorado Springs' failure to properly train and/or supervise its employees.

50.     Defendant Colorado Springs could have and should have pursued reasonable methods for the training and supervising of such employees but failed to do so.

51.     Defendant Colorado Springs' policies, customs, or practices in failing to properly train and/or supervise its employees were the moving force and proximate cause of the violation to Ms. Palmer's constitutional rights.

52.     The customs, policies, and practices of Defendant Colorado Springs of encouraging, condoning, tolerating, and ratifying the retaliation against those who criticize public officials, as described herein, was the moving force behind, and proximate cause of, the violation to Ms. Palmer's constitutional rights.

53.     The acts or omissions of Defendant Colorado Springs caused Ms. Palmer damages in that she suffered physical and mental pain, among other injuries, damages, and losses.

54.     The actions of Defendant Colorado Springs as described herein deprived Ms. Palmer of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused her other damages.

55.     The incident involving Ms. Palmer, standing alone, is sufficient evidence of these customs, policies and/or practices. Yet, there is more evidence of Defendant Colorado Springs' unconstitutional customs, policies, and/or practices.

**Defendant Colorado Springs has a custom and practice of arresting and using excessive force against individuals in retaliation for their exercise of their First Amendment rights, particularly in response to criticism of law enforcement officials, and failing to discipline officers who retaliate against those who criticize of law enforcement officials.**

56.     Defendant Colorado Springs has a history of retaliating against individuals who protest police officers—an issue that should have long since been addressed by Defendant Colorado Springs. The following cases show that at the time of Ms. Palmer's arrest, there was a formal or informal custom and practice, that was known to Defendant Colorado Springs, of retaliating against individuals who criticize police officers. These cases also illustrate an obvious need, of which Defendant Colorado Springs was aware at the time of Ms. Palmer's arrest and brutalization, for Defendant Colorado Springs to provide further supervision, discipline, and training to CSPD officers on the necessity of not retaliating against individuals who criticize police officers. CSPD has also ratified and condoned this custom by failing to discipline its officers for arresting and brutalizing individuals for criticizing law enforcement and their decisions to institute malicious prosecutions to cover-up these unlawful actions.

57.     On July 4, 2013, CSPD officers arrested Grant Bloomquist without probable cause after he verbally protested two CSPD officers' beating of another man outside of a nightclub. Mr. Bloomquist walked outside of Cowboys Night Club in downtown Colorado Springs and saw officers brutally beating a black man, so he stepped to about 7 feet away and said, "get the fuck off him." At that point, Mr. Bloomquist was blindsided and struck by an officer, who hit him right in the face. Multiple CSPD officers then struck Mr. Bloomquist

repeatedly in the groin area with knee strikes and pinned him against a police vehicle. The CSPD

officers then threw him in the police car and arrested him. These actions were taken by CSPD

officers solely because Mr. Bloomquist was speaking out in order to protect a victim of police

misconduct. Mr. Bloomquist was subsequently prosecuted in an effort to cover-up the officers'

unconstitutional actions. No officers were disciplined or reprimanded for their conduct that

violated Mr. Bloomquist's constitutional rights.

58.     On March 25, 2015, CSPD officers unlawfully arrested and brutalized Ryan

Brown because he filmed a traffic stop, protested CSPD officers' misconduct during that traffic

stop, and asserted his rights. Mr. Brown was in the passenger seat of a vehicle that CPSD officers

pulled over because he and his brother (the driver of the vehicle) were Black men driving

through a predominantly white neighborhood in Colorado Springs. Once CSPD officers initiated

the stop, Mr. Brown immediately asked them why the vehicle had been pulled over and started

filming. In response to this free speech activity, the CSPD officers held Mr. Brown at gunpoint,

forced him out of the vehicle, slammed him into a snowy parkway, and stopped his recording.

Mr. Brown was subsequently prosecuted in an effort to cover-up the officers' unconstitutional

actions. Mr. Brown filed a lawsuit against Colorado Springs. Colorado Springs settled Mr.

Brown's claims against the officers and itself. No officer was disciplined or reprimanded for

violating Mr. Brown's constitutional rights.

59.     On November 2, 2017, CSPD officers arrested Terrell Clayton for simply filming

police activity in Colorado Springs and protesting police officers who attempted to intimidate

him into taking actions he was not legally required to take, namely providing CSPD officers with

identification. On that day, Mr. Clayton drove to the Colorado Springs Police Department

substation at 7850 Goddard Street, Colorado Springs, Colorado. Mr. Clayton set out to film

officers, and the station itself, for his YouTube channel, which is activity protected by the First Amendment. To do so, he carried with him a handheld camera and his cellphone. Mr. Clayton was filming outside of the substation when he was approached by two Colorado Springs police officers, Officer Steve Pugsley and Sergeant Brad Pratt. When they approached Mr. Clayton, the officers almost immediately asked Mr. Clayton for identification. Mr. Clayton politely refused, correctly informing the officers that they needed reasonable suspicion that he had committed a crime in order to demand identification from him. One officer responded that the officers had reasonable suspicion that Mr. Clayton had committed a crime because he was "outside of a law enforcement facility acting suspicious." He falsely told Mr. Clayton that acting "suspicious" meets the elements of the crime of disorderly conduct. They then told Mr. Clayton that he was "required" to identify himself. Mr. Clayton told the officers that he had a constitutional right to record police activity and that he would not produce identification without reasonable suspicion that he had committed a crime. Immediately after Mr. Clayton's assertion of his rights, the CSPD officers forcibly detained him. They aggressively searched Mr. Clayton and seized his camera, placing it on the trunk of the police car. The officers then placed Mr. Clayton in the back of their police car. While in the back of the police car, Mr. Clayton began filming on his cell phone. As one of the officers was speaking to Mr. Clayton, while Mr. Clayton was detained against his will in the back of the police car, the officer falsely told Mr. Clayton that his detention was a *Terry* stop. The officer then seized Mr. Clayton's cell phone and stopped his recording. Unbeknownst to the officers, Mr. Clayton's camera (which had been seized initially by the officers and placed on the trunk of their police car) was continuing to film. On film, the officers stated that, if Mr. Clayton didn't provide his identification, they were going to book him into jail. Sergeant Pratt then told the other officers that he didn't want to hear Mr. Clayton "barkin' laws and all that."

Sergeant Pratt then, seemingly knowing that his detention of Mr. Clayton was unconstitutional, told the other officers that "if this ends up going to the court bullshit... then literally fuck my life." Sergeant Pratt then told Officer Pugsley to "keep him detained out here." The officers eventually told Mr. Clayton that he had a choice: either provide his name and identification or spend the evening in jail. Despite his belief that the officers had no reasonable suspicion to require him to produce identification, Mr. Clayton eventually provided the officers with his identification so as to avoid spending the night in jail. He was then released with no citation. Mr. Clayton has never been cited, or charged, with any crime arising out of the incident on November 2, 2017. The officers were not disciplined or reprimanded for violating Mr. Clayton's constitutional rights.

60.     On January 30, 2019, Michael Sexton was filming police activity in downtown Colorado Springs. Mr. Sexton observed CSPD police officers perform a traffic stop on a vehicle at the intersection of Bijou Street and Nevada Avenue. Mr. Sexton was standing on the sidewalk while filming the officers. While interacting with the officers, Mr. Sexton never left the sidewalk, never stood closer than five to seven feet away from the officers, and never came in between the officers and the motorist he had stopped. While the officers performed their traffic stop, Mr. Sexton began to criticize the officers, including saying "fuck the police." One of the officers told Mr. Sexton, wrongly, that "fuck the police" is profanity and that it violates the disorderly conduct statute. The officers arrested Mr. Sexton because he kept saying the word "fuck" and cited him with disorderly conduct. Mr. Sexton was arrested for simply saying "fuck the police." Mr. Sexton was prosecuted for almost one year in an attempt to cover-up the CSPD police officers' unconstitutional arrest. On the eve of trial, the prosecution dismissed the case against him. The case was dismissed because there was an abject lack of any probable cause

whatsoever to charge Mr. Sexton with a crime. The officers were not disciplined or reprimanded for violating Mr. Sexton's constitutional rights.

61.     On June 7, 2019, Mr. Sexton was leaving the 7-11 near the intersection of 30th Street and Colorado Avenue in Colorado, Springs, Colorado. As he stood in the parking lot, Officer Matthew Anderson, a CSPD officer, drove by in a police car.  As Officer Anderson drove by, Mr. Sexton flipped off Officer Anderson. Immediately after seeing Mr. Sexton flipping off the car, Officer Anderson made an illegal U-turn across four lanes of traffic to contact Mr. Sexton and ask if he needed any help. Mr. Sexton told Officer Anderson that he did not need help, and Anderson began to drive away on 30th Street. As Officer Anderson drove away, Mr. Sexton looked both ways and, seeing no cars in the area, safely crossed 30th Street. Again, Officer Anderson made another illegal U-turn and drove toward Mr. Sexton, at which point Mr. Sexton began recording the incident on his phone. As Officer Anderson approached, Mr. Sexton flipped him off again while standing on the sidewalk. Immediately after Mr. Sexton flipped him off again, Officer Anderson activated the police lights on his car and pulled over. Officer Anderson jumped out of his vehicle and grabbed Mr. Sexton. Officer Anderson used force against Mr. Sexton within seconds of the initiation of the interaction. Officer Anderson pulled Mr. Sexton to the police car by his wrist and shoved Mr. Sexton against, and over, the hood of his vehicle. Though Mr. Sexton repeatedly asked Officer Anderson to please "calm down," he escalated the situation by using excessive force because he was angry that Mr. Sexton had flipped him off and filmed him. Officer Anderson pinned Mr. Sexton to the hood of the car and wrenched his arm behind his back. Mr. Sexton continued to tell Anderson that he was not fighting him, indicated that he was not resisting arrest with his body language, and asked Anderson not to rough him up. After a half an hour, Officer Anderson released Mr. Sexton from

handcuffs and issued a citation for jaywalking under COLO. SPRINGS MUN. CODE 10.18.104. Mr. Sexton was prosecuted for almost three months in an attempt to cover-up Officer Anderson's unconstitutional conduct before dismissing the charges against him for a lack of probable cause. Officer Anderson was not disciplined for violating Mr. Sexton's constitutional rights.

62.　Several of these representative cases resulted in the City of Colorado Springs paying hundreds of thousands of dollars to settle First Amendment retaliation claims, yet the facts surrounding Ms. Palmer's case make apparent that Defendant Colorado Springs continues to condone behavior by its police officers, including the use of excessive force and violations of the First Amendment. This custom and practice caused the violation of Ms. Palmer's constitutional rights and Defendant Colorado Springs was on notice of this custom and practice based on these past incidents, which resulted in litigation and significant payouts by Defendant Colorado Springs at taxpayer expense.

63.　Through Defendant Colorado Springs' continuous ratification of its officers unconstitutional conduct, as described above, Defendant Colorado Springs has condoned the conduct of its officers and sent the message that it will not discipline them for violating the Constitution.

64.　Defendant Colorado Springs knew or had constructive knowledge, based on the customary actions of its officers described above and its condoning of those actions, that its officers would retaliate against those who criticized the police, like Ms. Palmer.

65.　Defendant Colorado Springs could have and should have pursued reasonable methods for the training and supervising of its officers, but failed to do so.

66.     Defendant Colorado Springs' policies, customs, or practices in failing to properly train and supervise its employees were a moving force and proximate cause of their violation of Ms. Palmer's constitutional rights.

## STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Violation — Freedom Of Speech And Assembly**

67.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

68.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

69.     Defendants are "persons" under 42 U.S.C. § 1983.

70.     Plaintiff was engaged in First Amendment-protected expression by gathering for a protest in downtown Colorado Springs.

71.     The actions of Defendants can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

72.     Plaintiff's expression was on a matter of public concern and did not violate any law.

73.     Plaintiff's expression occurred at a traditional public forum.

74.     Defendants' actions were a content-based and/or viewpoint-based restriction of Plaintiff's expression.

75.     Defendants' actions were not a reasonable time, place, and manner restriction on speech.

76.     At the time when Defendants stopped Plaintiff from speaking, expressing herself, and gathering, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to gather, express herself, and speak freely. Any reasonable law enforcement officer knew or should have known of this clearly established right.

77.     Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

78.     Defendants stopped Plaintiff from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Colorado Springs.

79.     Defendant Colorado Springs has a custom, practice or policy of tolerating violations of the First Amendment of the United States and Colorado Constitutions.

80.     The actions of the Individual Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Colorado Springs.

81.     Defendant Colorado Springs' customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind the Individual Defendants' violation of Plaintiff's constitutional rights.

82.     As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

83.     Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

84.     Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**First Amendment Violation — Retaliation**

85.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

86.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

87.     Defendants are "persons" under 42 U.S.C. § 1983.

88.     Plaintiff was engaged in First Amendment-protected expression by gathering for the protest.

89.     Plaintiff's expression was on a matter of public concern and did not violate any law.

90.     Plaintiff's expression occurred at a traditional public forum.

91.     Defendants jointly and on their own accord responded to Plaintiff's First Amendment protected activity with retaliation, including but not limited to use of physical force.

92.     Defendants' actions against Plaintiff were a content- and/or viewpoint-based restriction on speech, association, and assembly.

93.     By unlawfully using force against Plaintiff, Defendants sought to punish Plaintiff for exercising her First Amendment rights, to silence her, and to deter her from gathering and

speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

94.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of her First Amendment rights.

95.     At the time when Defendants retaliated against Plaintiff for exercising her First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

96.     Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

97.     Defendants stopped Plaintiff from engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Colorado Springs.

98.     Defendant Colorado Springs has a custom, practice or policy of tolerating its officers' retaliatory violations of the First Amendment of the United States and Colorado Constitutions.

99.     The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Colorado Springs.

100.     Defendant Colorado Springs' customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

101.     As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

102.     Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

103.     Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation — Excessive Force**

104.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

105.     Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

106.     Defendants are "persons" under 42 U.S.C. § 1983.

107.     Plaintiff had a protected Fourth Amendment interest against being victimized by the use of excessive force at the hands of law enforcement personnel.

108.     Defendants did not have, at any time, a legally valid basis to seize Plaintiff.

109.     Defendants unlawfully seized Plaintiff by means of excessive physical force.

110.     Defendants had no warrant authorizing any seizure of Plaintiff.

111.     Each Defendant failed to intervene to prevent the other Defendant from violating Plaintiff's constitutional rights, and is thereby liable for such failure to intervene.

112.    Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

113.    Plaintiff had committed no crime (nor could any of the Defendants have reasonably believed she had committed any crime) that would legally justify arrest or detention, Plaintiff gave Defendants no reason to fear for their safety or the safety of any member of the public. Plaintiff was obviously unarmed and Plaintiff was not resisting arrest or fleeing.

114.    Defendants did not have a legally valid basis to seize Plaintiff in the manner and/or with the level of force used under the circumstances presented.

115.    Defendants recklessly created the situation in which they used force.

116.    Defendants' actions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them.

117.    At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be secure from unreasonable seizure through excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

118.    Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally-protected rights.

119.    Defendant Colorado Springs has a custom, practice or policy of tolerating violations of the Fourth Amendment of the United States Constitution.

120.    The actions of the Individual Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Colorado Springs.

121.    Defendant Colorado Springs' customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

122.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described herein, Plaintiff suffered injuries, damages, and losses.

123.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

124.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourteenth Amendment Violation — Excessive Force

125.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

126.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

127.    Defendants are "persons" under 42 U.S.C. § 1983.

128.    Plaintiff had a protected Fourteenth Amendment Substantive Due Process interest against being unreasonably harmed by the use of excessive force at the hands of law enforcement personnel.

129.    Defendants did not have, at any time, a legally valid basis to use force against Plaintiff.

130.    Defendants' use of force was extremely disproportionate.

131.    Defendants acted with malice and/or excessive zeal amounting to an abuse of power.

132.    Defendants acted for the purpose of causing harm unrelated and unnecessary to any relevant or legitimate policing objective.

133.    Defendants' actions were arbitrary and/or conscience shocking in light of the circumstances confronting them.

134.    Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally-protected rights.

135.    At the time when Defendants used excessive force against Plaintiff, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be secure from excessive force. Any reasonable law enforcement officer knew or should have known of this clearly established right.

136.    The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Colorado Springs.

137.    Defendant Colorado Springs' customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

138.    As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

139.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

140.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**FIFTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourteenth Amendment Violation — Due Process**

141.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

142.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

143.    Defendants are "persons" under 42 U.S.C. § 1983.

144.    The orders issued by Defendants, and the authority on which those orders were based, were vague and not clearly defined.

145.    The orders issued by Defendants, and the authority on which those orders were based, offered no clear and measurable standard by which Plaintiff and others could act lawfully.

146.    Defendants lacked legal authority, through Colorado Springs municipal ordinance, state law, or otherwise, to order the dispersal of Plaintiff and, thereby, there were no explicit standards to govern the order of dispersal or limits on law enforcement's authority to order dispersal.

147.    The orders issued by Defendants, and the authority on which those orders were based, failed to provide people of ordinary intelligence a reasonable opportunity to understand what conduct they prohibited, and authorized or encouraged arbitrary and discriminatory enforcement, or both.

148.    At the time when Defendants violated Plaintiff's due process rights, Plaintiff had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to be afforded due process of law. Any reasonable law enforcement officer knew or should have known of this clearly established right.

149.    Defendants engaged in these actions intentionally, willfully, and wantonly, demonstrating deliberate indifference to, and a reckless disregard for, Plaintiff's constitutionally-protected rights.

150.    The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Colorado Springs.

151.    Defendant Colorado Springs' customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

152.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

153.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

### SIXTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Fourth Amendment Violation — Unlawful Arrest

154.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

155.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

156.    Defendants are "persons" under 42 U.S.C. § 1983.

157.    Defendants did not have probable cause or any other legal basis to believe that Plaintiff had committed or was committing any violating of the law prior to initiating a stop of Plaintiff and arresting her.

158.    Defendants had no warrant authorizing her to contact Plaintiff.

159.    Defendants who did not personally detain or arrest Plaintiff failed to intervene to prevent the other Defendants from searching Plaintiff without a warrant, probable cause, or exigent circumstances.

160.    No legally recognizable exigent circumstances existed which would have justified or permitted Defendants' conduct.

161.    Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

162.    Defendants' intentional, willful, and wanton seizure of Plaintiff, as described herein, was solely based on Plaintiff's exercise of her First Amendment rights.

163.    Defendant Wrede, as the supervisor on scene, caused, and is liable for, the actions of his subordinate officers.

164.    Defendant Colorado Springs has a custom, practice or policy of tolerating violations of the Fourth Amendment of the United States Constitution.

165.    Defendant Colorado Springs' customs, policies, and/or practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

166.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

167.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## SEVENTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983
## Fourth Amendment Violation — Unlawful Search

168.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

169.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

170.    Defendants are "persons" under 42 U.S.C. § 1983.

171.    Plaintiff has a legitimate expectation of privacy in her body and her property being free from unreasonable governmental search.

172.    Defendants had no warrant authorizing any such search of Plaintiff's body or property.

173.    No legally recognizable exigent circumstances or other legal justification existed which would have justified or permitted Defendants' conduct.

174.    Defendants' actions were objectively unreasonable in light of the circumstances confronting them.

175.    Defendants who did not personally search Plaintiff failed to intervene to prevent the other Defendants from searching Plaintiff without reasonable suspicion, a warrant, or exigent circumstances.

176.    Defendants engaged in these actions intentionally, willfully, and wantonly.

177.    Defendant Colorado Springs has a custom, practice or policy of tolerating violations of the Fourth Amendment of the United States Constitution.

178.    Defendant Colorado Springs' customs, policies, and/or practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

179.    Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered, and other compensatory and special damages.

180.    Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

**EIGHTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983**
**Fourth Amendment Violation — Malicious Prosecution**

181.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

182.    Defendants acted under color of state law, and within the course and scope of their employment, in their capacities as law enforcement officers at all times relevant to the allegations in this Complaint.

183.    Defendants are "persons" under 42 U.S.C. § 1983.

184.    Defendants initiated charges against Plaintiff, knowing that there was no basis for those charges or probable cause to believe Plaintiff had committed any crime, by arresting Plaintiff.

185.    No probable cause supported Plaintiff's original arrest, confinement, or prosecution.

186.    Defendants' motivation was not to bring to justice a person thought to have committed a crime, but rather for the purpose of punishing Plaintiff.

187.    Defendants acted with malice in initiating the charges against Plaintiff and her continued prosecution.

188.    Defendants engaged in the above actions and omissions knowingly, maliciously, willfully and wantonly.

189.    Defendants who did not personally initiate the malicious prosecution of Plaintiff failed to intervene to prevent the other Defendants from doing so.

190.    Defendants' conduct violated clearly established rights belonging to Plaintiff of which a reasonable person in their positions knew or should have known.

191.    Defendant Wrede, as the supervisor on scene, caused, and is liable for, the actions of his subordinate officers.

192.    The charges against Plaintiff resulting from the actions/omissions of Defendants described herein were dismissed; thus, the original action against Plaintiff terminated in her favor.

193.    Defendants' actions caused Plaintiff damages. As a legal and proximate result of Defendants' actions or omissions described herein, including the unconstitutional custom, policy, or practice of making arrests without probable cause described above from which this malicious prosecution claim arises, Plaintiff has suffered and continues to suffer humiliation, lost earnings, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

194.    Defendant Colorado Springs has a custom, practice, or policy of tolerating violations of the Fourth Amendment of the United States Constitution, particularly condoning malicious prosecutions initiated by police officers without probable cause.

195.    Defendant Colorado Springs' customs, policies, and/or practices were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against each Defendant, and award her all relief allowed by law, including but not limited to the following:

A.    All appropriate relief at law and equity;

B.    Declaratory relief and other appropriate equitable relief;

C.    Economic losses on all claims as allowed by law;

D.    Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

E.      Punitive damages on all claims allowed by law and in an amount to be determined

at trial;

F.      Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988,

including expert witness fees, on all claims allowed by law;

G.      Pre-and post-judgment interest at the lawful rate; and

H.      Any other appropriate relief at law and equity that this Court deems just and

proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 14th day of July 2021.

KILLMER, LANE & NEWMAN, LLP

*/s/ Andy McNulty*
Andy McNulty
Mari Newman
1543 Champa St., Ste. 400
Denver, CO 80202
Phone: (303) 571-1000
Facsimile: (303) 571-1001
amcnulty@kln-law.com
mnewman@kln-law.com

COUNSEL FOR PLAINTIFF